FILED _____ ENTERED
_____ LOGGED _____ RECEIVED

AUG 10 2023

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA   &ast;
  &ast;
v.   &ast;   **Criminal No. PJM-23-0262**
  &ast;
**CORPORACIÓN FINANCIERA**   &ast;
**COLOMBIANA S.A.**   &ast;
  &ast;
  **Defendant.**   &ast;
  &ast;

---

## DEFERRED PROSECUTION AGREEMENT

Defendant Corporación Financiera Colombiana S.A. ("Corficolombiana" or the "Company"), pursuant to authority granted by the Company's Board of Directors reflected in Attachment B, the United States Department of Justice, Criminal Division, Fraud Section (the "Fraud Section"), and the United States Attorney's Office for the District of Maryland (the "Office") (collectively, the "Fraud Section and the Office") enter into this Deferred Prosecution Agreement (the "Agreement"). The terms and conditions of this Agreement are as follows:

### Criminal Information and Acceptance of Responsibility

1.   The Company acknowledges and agrees that the Fraud Section and the Office will file the attached one-count criminal information in the United States District Court for the District of Maryland (the "Information") charging the Company with one count of conspiracy to commit an offense against the United States, in violation of Title 18, United States Code, Section 371, that is, to violate the anti-bribery provisions of the Foreign Corrupt Practices Act of 1977 ("FCPA"), as amended, Title 15, United States Code, Section 78dd-1. In so doing, the Company: (a) knowingly waives any right it may have to indictment on this charge, as well as all

1

rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, Title 18, United States Code, Section 3161, and Federal Rule of Criminal Procedure 48(b); (b) knowingly waives any objection with respect to venue for any charges by the United States arising out of the conduct described in the Statement of Facts attached hereto as Attachment A ("Statement of Facts") and consents to the filing of the Information, as provided under the terms of this Agreement, in the United States District Court for the District of Maryland; and (c) agrees that the charges in the Information and any charges arising from the conduct described in the Statement of Facts are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement. The Fraud Section and the Office agree to defer prosecution of the Company pursuant to the terms and conditions described below.

2.    The Company admits, accepts, and acknowledges that it is responsible under United States law for the acts of its officers, directors, employees, and agents as charged in the Information, and as set forth in the attached Statement of Facts, and that the allegations described in the Information and the facts described in the attached Statement of Facts are true and accurate. The Company agrees that, effective as of the date the Company signs this Agreement, in any prosecution that is deferred by this Agreement, it will not dispute the Statement of Facts set forth in this Agreement, and, in any such prosecution, the Statement of Facts shall be admissible as: (a) substantive evidence offered by the government in its case-in-chief and rebuttal case; (b) impeachment evidence offered by the government on cross-examination; and (c) evidence at any sentencing hearing or other hearing. In addition, in connection therewith, the Company agrees not to assert any claim under the United States Constitution, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, Section

1B1.1(a) of the United States Sentencing Guidelines, or any other federal rule that the Statement of Facts should be suppressed or is otherwise inadmissible as evidence in any form.

## Term of the Agreement

3.      This Agreement is effective for a period beginning on the date on which the Agreement is fully executed, or the Information is filed with the Court, whichever comes later, and ending three years from that date (the "Term").  The Company agrees, however, that, in the event the Fraud Section and the Office determine, in their sole discretion, that the Company has knowingly violated any provision of this Agreement or has failed to completely perform or fulfill each of the Company's obligations under this Agreement, an extension or extensions of the Term may be imposed by the Fraud Section and the Office, in their sole discretion, for up to a total additional time period of one year, without prejudice to the Fraud Section's and the Office's right to proceed as provided in Paragraphs 17 to 21 below.  Any extension of the Agreement extends all terms of this Agreement, including the terms of the reporting requirement in Attachment D, for an equivalent period.  Conversely, in the event the Fraud Section and the Office find, in their sole discretion, that there exists a change in circumstances sufficient to eliminate the need for the reporting requirement in Attachment D, and that the other provisions of this Agreement have been satisfied, the Agreement may be terminated early.

## Relevant Considerations

4.      The Fraud Section and the Office enter into this Agreement based on the individual facts and circumstances presented by this case and by the Company, including:

        a.      the nature and seriousness of the offense conduct, as described in the Statement of Facts, including the involvement of a high-level Corficolombiana executive in a

3

scheme to pay over $23 million in bribes to Colombian government officials in exchange for a substantial public infrastructure project;

    b.  the Company did not receive voluntary disclosure credit pursuant to the Criminal Division's Corporate Enforcement and Voluntary Self-Disclosure Policy, or pursuant to U.S. Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 8C2.5(g)(1), because it did not voluntarily and timely disclose to the Fraud Section and the Office the conduct described in the Statement of Facts attached hereto as Attachment A;

    c.  the Company received credit for its cooperation with the Fraud Section's and the Office's investigation pursuant to U.S.S.G. § 8C2.5(g)(2) because it cooperated with their investigation and demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct; the Company also received credit for its cooperation pursuant to Criminal Division Corporate Enforcement and Voluntary Self-Disclosure Policy, by, among other things, (i) timely providing facts obtained through the Company's extensive and robust internal investigation; (ii) making numerous detailed factual presentations that distilled certain key factual information uncovered through the Company's internal investigation to the Fraud Section and the Office, which assisted the Fraud Section and the Office in preserving and obtaining evidence as part of its own independent investigation; (iii) producing documents to the Fraud Section and the Office from Colombia that the Fraud Section and the Office may not otherwise have had access to in ways that did not implicate foreign data privacy laws and providing translations for those documents; (iv) providing sworn testimony from the Colombian criminal and administrative proceedings of relevant witnesses whom the Fraud Section and the Office were not able to independently interview; (v) proactively identifying information previously unknown to the Fraud Section and the Office; and (vi) collecting and producing voluminous

4

relevant documents and translations to the Fraud Section and the Office, including documents located outside the United States;

        d.     the Company provided to the Fraud Section and the Office all relevant facts known to it, including information about the individuals involved in the conduct described in the attached Statement of Facts and conduct disclosed to the Fraud Section and the Office prior to the Agreement;

        e.     the Company engaged in remedial measures, including: (i) conducting a root cause analysis of conduct identified during internal investigations and promptly taking action to enhance corporate governance and controls at joint venture entities and improve oversight of non-controlled joint ventures and investments; (ii) overhauling its compliance program, including strengthening its corporate governance and risk management structures, enhancing the independence and stature of its compliance function, and hiring additional experienced compliance personnel; (iii) enhancing the Company's third-party intermediary risk management process, including through the implementation of risk-based due diligence, screening, and ongoing monitoring and oversight procedures; (iv) implementing a robust process for reporting and investigating allegations of misconduct; (v) establishing a disciplinary process overseen by a cross-functional ethics committee; (vi) conducting testing of its anticorruption compliance program to ensure compliance enhancements and remediation have been fully implemented and are working in practice; and (vii) engaging in periodic review and updating of its anticorruption compliance program through regular risk assessments, culture reviews, and compliance audits.

        f.     the Company has enhanced and has committed to continuing to enhance its compliance program and internal controls, including ensuring that its compliance program

satisfies the minimum elements set forth in Attachment C to this Agreement (Corporate Compliance Program);

g.      the Company has two prior administrative resolutions—namely a resolution with Colombia's Superintendency of Industry and Commerce ("SIC") related to the same conduct described in the attached Statement of Facts and an unrelated administrative resolution with Colombia's Superintendency of Finance—but no prior criminal history;

h.      the Company's agreement to resolve concurrently an investigation by the U.S. Securities and Exchange Commission ("SEC") relating to the conduct described in the attached Statement of Facts through a cease-and-desist proceeding, and agreeing to pay $40,269,289 million in disgorgement and prejudgment interest;

i.      the Company's agreement to drop its appeal of the resolution of Colombia's SIC to impose approximately $25,900,000 as a penalty for violations of Colombian anti-trust law related to the same conduct described in the attached Statement of Facts (the "Colombian Resolution"), which the Fraud Section and the Office are crediting pursuant to JM 1-12.100, in connection with the penalty in this Agreement;

j.      the Company has agreed to continue to cooperate with the Fraud Section and the Office in any ongoing investigation as described in Paragraph 5 below; and

k.      accordingly, after considering (a) through (j) above, the Fraud Section and the Office have determined that the appropriate resolution in this case is a deferred prosecution agreement and a penalty of $40,600,000, which reflects a discount of 30 percent off of the bottom of the otherwise-applicable U.S. Sentencing Guidelines fine range, and forfeiture of $28,630,000, which will be credited against disgorgement of ill-gotten profits that the Company pays to the SEC in a concurrent resolution.

6

1.      Based on the Company's remediation and the state of its compliance program, and the Company's agreement to report to the Fraud Section and the Office as set forth in Attachment D to this Agreement (Corporate Compliance Reporting), the Fraud Section and the Office determined that an independent compliance monitor was unnecessary.

**Ongoing Cooperation and Disclosure Requirements**

5.      The Company shall cooperate fully with the Fraud Section and the Office in any and all matters relating to the conduct described in this Agreement and the attached Statement of Facts and other conduct under investigation by the Fraud Section and the Office at any time during the Term until the later of the date upon which all investigations and prosecutions arising out of such conduct are concluded, or the end of the Term.  At the request of the Fraud Section and the Office, the Company shall also cooperate fully with other domestic or foreign law enforcement and regulatory authorities and agencies, as well as the Multilateral Development Banks ("MDBs"), in any investigation of the Company or any of its subsidiaries or affiliates, or any of its present or former officers, directors, employees, agents, and consultants, or any other party, in any and all matters relating to the conduct described in this Agreement and the attached Statement of Facts and other conduct under investigation by the Fraud Section and the Office. The Company's cooperation pursuant to this Paragraph is subject to applicable law and regulations, including data and banking privacy and national security laws, as well as valid claims of attorney-client privilege or attorney work product doctrine; however, the Company must provide to the Fraud Section and the Office a log of any information or cooperation that is not provided based on an assertion of law, regulation, or privilege, and the Company bears the

burden of establishing the validity of any such assertion.  The Company agrees that its

cooperation pursuant to this Paragraph shall include, but not be limited to, the following:

        a.      The Company represents that it has timely and truthfully disclosed all

factual information with respect to its activities, those of its subsidiaries, and affiliates, and those

of its present and former directors, officers, employees, agents, and consultants relating to the

conduct described in this Agreement and the attached Statement of Facts, as well as any other

conduct under investigation by the Fraud Section and the Office at any time about which the

Company has any knowledge. The Company further agrees that it shall promptly and truthfully

disclose all factual information with respect to its activities, those of its parent company and

affiliates, and those of its present and former directors, officers, employees, agents, and

consultants about which the Company shall gain any knowledge or about which the Fraud

Section may inquire.  This obligation of truthful disclosure includes, but is not limited to, the

obligation of the Company to provide to the Fraud Section and the Office, upon request, any

document, record or other tangible evidence about which the Fraud Section and the Office may

inquire of the Company, including evidence that is responsive to any requests made prior to the

execution of this Agreement.

        b.      Upon request of the Fraud Section and the Office, the Company shall

designate knowledgeable employees, agents or attorneys to provide to the Fraud Section and the

Office the information and materials described in Paragraph 5(a) above on behalf of the

Company.  It is further understood that the Company must at all times provide complete, truthful,

and accurate information.

        c.      The Company shall use its best efforts to make available for interviews or

testimony, as requested by the Fraud Section and the Office, present or former officers, directors,

8

employees, agents and consultants of the Company. This obligation includes, but is not limited to, sworn testimony before a federal grand jury or in federal trials, as well as interviews with domestic or foreign law enforcement and regulatory authorities. Cooperation under this Paragraph shall include identification of witnesses who, to the knowledge of the Company, may have material information regarding the matters under investigation.

        d.      With respect to any information, testimony, documents, records, or other tangible evidence provided to the Fraud Section and the Office pursuant to this Agreement, the Company consents to any and all disclosures, subject to applicable laws and regulations, to other governmental authorities, including United States authorities and those of a foreign government, as well as the MDBs, of such materials as the Fraud Section and the Office, in their sole discretion, shall deem appropriate.

      6.      In addition to the obligations in Paragraph 5, during the Term, should the Company learn of any evidence or allegation of conduct that may constitute a violation of the FCPA anti-bribery or accounting provisions had the conduct occurred within the jurisdiction of the United States, the Company shall promptly report such evidence or allegation to the Fraud Section and the Office.

**Payment of Monetary Penalty**

      7.      The Fraud Section and the Office and the Company agree that application of the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") to determine the applicable fine range yields the following analysis:

        a.      The November 1, 2021 U.S.S.G. are applicable to this matter.

        b.      Offense Level. Based upon U.S.S.G. § 2C1.1, the total offense level is 40, calculated as follows:

9

|  |  |
|---|---|
| § 2C1.1(a)(2)  Base Offense Level | 12 |
| § 2C1.1(b)(1)  More than One Bribe | +2 |
| § 2C1.1(b)(3)  High-Level Official | +4 |
| §§ 2C1.1(b)(2), 2B1.1(b)(1)(L) Value of Benefit Received (more than $25,000,000) | +22 |
| **TOTAL** | 40 |

c.   Base Fine.[1]   Based upon U.S.S.G. § 8C2.4(a)(1), the base fine is $72,500,000.

Culpability Score.  Based upon U.S.S.G. § 8C2.5, the culpability score is 4, calculated as follows

|  |  |  |
|---|---|---|
| (a) | Base Culpability Score | 5 |
| (b)(5) | The organization had 10 or more employees and an individual within substantial authority personnel participated in, condoned, or was willfully ignorant of the offense | +1 |
| (g)(2) | Cooperation, Acceptance | -2 |
|  | **TOTAL** | 4 |

Calculation of Fine Range:

| | |
|---|---|
| Base Fine | $72,500,000 |
| Multipliers | 0.8 (min) / 1.6 (max) |
| Fine Range | $58,000,000 / $116,000,000 |

8.     The Fraud Section and the Office and the Company agree, based on the application of the Sentencing Guidelines, that the appropriate criminal penalty is $40,600,000.

---

[1]     Because the offense was committed prior to November 1, 2015, the offense level fine table that was set forth in the version of §8C2.4(d) that was in effect on November 1, 2014 was used for the Base Fine calculation. *See* U.S.S.G. § 8C2.4(e)(1) (Aug. 2021).

This reflects a 30 percent discount off the bottom of the applicable Sentencing Guidelines fine range.  The Company and the Fraud Section and the Office agree that the Company will pay the United States Treasury $20,300,000, equal to one-half of the Total Criminal Penalty, within ten business days of the execution of this Agreement.  The Fraud Section and the Office agree to credit toward the amount paid by the Company and its subsidiary, Estudios y Proyectos del Sol S.A.S. ("Episol"), to authorities in Colombia related to the Colombian Resolution, up to a maximum of $20,300,000, so long as the Company and Episol drop their appeals seeking to annul and redress the Colombian Resolution within three months of the execution of this Agreement.  Should the Company and Episol fail to drop their appeals seeking to annul and redress the Colombian Resolution within three months of the execution of this Agreement, the Company will be required to pay the remaining amount of $20,300,000 to the United States Treasury on or before three months from the date of the Agreement.  The Company and the Fraud Section and the Office agree that this penalty is appropriate given the facts and circumstances of this case, including the Relevant Considerations described in Paragraph 4 of this Agreement. The Total Criminal Penalty is final and shall not be refunded. Furthermore, nothing in this Agreement shall be deemed an agreement by the Fraud Section and the Office that the Total Criminal Penalty is the maximum penalty that may be imposed in any future prosecution, and the Fraud Section and the Office are not precluded from arguing in any future prosecution that the Court should impose a higher fine, although the Fraud Section and the Office agree that under those circumstances, they will recommend to the Court that any amount paid under this Agreement should be offset against any fine the Court imposes as part of a future judgment. The Company acknowledges that no tax deduction may be sought in connection with the payment of any part of the Total Criminal Penalty. The Company shall not seek or accept

directly or indirectly reimbursement or indemnification from any source with regard to the penalty or disgorgement amounts that the Company pays pursuant to this Agreement or any other agreement entered into with an enforcement authority or regulator concerning the facts set forth in the attached Statement of Facts.

### Forfeiture

9.       As a result of the Company's conduct, including the conduct set forth in the attached Statement of Facts, the parties agree the Fraud Section and the Office could institute a civil and/or criminal forfeiture action against certain funds held by the Company and that such funds would be forfeitable to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and 982(a)(2) and Title 28, United States Code, Section 2461(c). The Company hereby admits that the facts set forth in the Statement of Facts establish that at least $28,630,000, representing the proceeds traceable to the commission of the offense, is forfeitable to the United States (the "Forfeiture Amount").  The Company releases any and all claims it may have to the Forfeiture Amount, agrees that the forfeiture of such funds may be accomplished either administratively or judicially at the Fraud Section's and the Office's election, and waives the requirements of any applicable laws, rules or regulations governing the forfeiture of assets, including notice of the forfeiture.  If the Fraud Section and the Office seek to forfeit the Forfeiture Amount judicially or administratively, the Company consents to entry of an order of forfeiture or declaration of forfeiture directed to such funds and waives any defense it may have under Title 18, United States Code, Sections 981-984, including but not limited to notice, statute of limitations, and venue.  The Company agrees to sign any additional documents necessary to complete forfeiture of the Forfeiture Amount.  The Company also agrees that it shall not file any petitions for remission, restoration, or any other assertion of ownership or request for return

relating to the Forfeiture Amount, or any other action or motion seeking to collaterally attach the seizure, restraint, forfeiture, or conveyance of the Forfeiture Amount, nor shall it assist any others in filing any such claims, petitions, actions, or motions.

10.     The Fraud Section and the Office agree that anticipated payments by the Company in connection with concurrent resolutions with the SEC shall be credited against the Forfeiture Amount in the amount of $28,630,000 (the "Forfeiture Credit Amount"). Because the Forfeiture Amount is equal to the Forfeiture Credit Amount, the Company shall not be required to pay a money judgment of forfeiture, provided that it pays the Forfeiture Credit Amount to the SEC in connection with the Company's resolution with the SEC. Should any amount of the Forfeiture Credit Amount not be paid to the SEC in connection with the Company's resolution with the SEC, the Company agrees that it shall make a payment of any remaining unpaid portion of the Forfeiture Credit Amount by wire transfer pursuant to instructions provided by the Fraud Section and the Office no later than 10 days after one year from the date of the Agreement.

11.     Any portion of the Forfeiture Amount that is paid is final and shall not be refunded should the Fraud Section and the Office later determine that the Company has breached this Agreement and commence a prosecution against the Company. In the event of a breach of this Agreement and subsequent prosecution, the Fraud Section and the Office are not limited to the Forfeiture Amount. The Fraud Section and the Office agree that in the event of a subsequent breach and prosecution, they will recommend to the Court that the amounts paid pursuant to this Agreement be offset against whatever forfeiture the Court shall impose as part of its judgment. The Company understands that such a recommendation will not be binding on the Court.

**Conditional Release from Liability**

12.     Subject to Paragraphs 17 to 21, the Fraud Section and the Office agree, except as provided in this Agreement, that they will not bring any criminal or civil case against the Company or any of its direct or indirect affiliates, subsidiaries or joint ventures relating to any of the conduct described in the attached Statement of Facts or the criminal Information filed pursuant to this Agreement.  The Fraud Section and the Office, however, may use any information related to the conduct described in the attached Statement of Facts against the Company, or any of its subsidiaries or affiliates: (a) in a prosecution for perjury or obstruction of justice; (b) in a prosecution for making a false statement; (c) in a prosecution or other proceeding relating to any crime of violence; or (d) in a prosecution or other proceeding relating to a violation of any provision of Title 26 of the United States Code.

        a.      This Agreement does not provide any protection against prosecution for any future conduct by the Company or any of its affiliates or subsidiaries.

        b.      In addition, this Agreement does not provide any protection against prosecution of any individuals, regardless of their affiliation with the Company or any of its affiliates or subsidiaries.

**Corporate Compliance Program**

13.     The Company represents that it has implemented and will continue to implement a compliance and ethics program designed to prevent and detect violations of the FCPA and other applicable anti-corruption laws throughout its operations, including those of its affiliates, subsidiaries, agents, and joint ventures, and those of its contractors and subcontractors whose responsibilities include interacting with foreign officials or other activities carrying a high risk of corruption, including, but not limited to, the minimum elements set forth in Attachment C.

14

14.     In order to address any deficiencies in its internal accounting controls, policies, and procedures, the Company represents that it has undertaken, and will continue to undertake in the future, in a manner consistent with all of its obligations under this Agreement, a review of its existing internal accounting controls, policies, and procedures regarding compliance with the FCPA and other applicable anti-corruption laws.  Where necessary and appropriate, the Company agrees to adopt a new compliance program, or to modify its existing one, including internal controls, compliance policies, and procedures in order to ensure that it maintains: (a) an effective system of internal accounting controls designed to ensure the making and keeping of fair and accurate books, records, and accounts; and (b) a rigorous anti-corruption compliance program that incorporates relevant internal accounting controls, as well as policies and procedures designed to effectively detect and deter violations of the FCPA and other applicable anti-corruption laws.  The compliance program, including the internal accounting controls system will include, but not be limited to, the minimum elements set forth in Attachment C.

### Corporate Compliance Reporting

15.     The Company agrees that it will report to the Fraud Section and the Office annually during the Term regarding remediation and implementation of the compliance measures described in Attachment C.  These reports will be prepared in accordance with Attachment D.

16.     Thirty days prior to the expiration of the Term, the Company, by the Chief Executive Officer and Chief Compliance Officer, will certify to the Fraud Section and the Office, in the form of executing the document attached as Attachment F to this Agreement, that the Company has met its compliance obligations pursuant to this Agreement.  Each certification will be deemed a material statement and representation by the Defendant to the executive branch of

15

the United States for purposes of Title 18, United States Code, Sections 1001 and 1519, and it will be deemed to have been made in the judicial district in which this Agreement is filed.

### Deferred Prosecution

17.     In consideration of the undertakings agreed to by the Company herein, the Fraud Section and the Office agree that any prosecution of the Company for the conduct set forth in the attached Statement of Facts be and hereby is deferred for the Term.  To the extent there is conduct disclosed by the Company that is not set forth in the attached Statement of Facts, such conduct will not be exempt from further prosecution and is not within the scope of or relevant to this Agreement.

18.     The Fraud Section and the Office further agree that if the Company fully complies with all of its obligations under this Agreement, the Fraud Section and the Office will not continue the criminal prosecution against the Company described in Paragraph 1 and, at the conclusion of the Term, this Agreement shall expire.  Within six months after the Agreement's expiration, the Fraud Section and the Office shall seek dismissal with prejudice of the criminal Information filed against the Company described in Paragraph 1, and agree not to file charges in the future against the Company based on the conduct described in this Agreement and the attached Statement of Facts.  If, however, the Fraud Section and the Office determine during this six-month period that the Company breached the Agreement during the Term, as described in Paragraph 17, the Fraud Section's and the Office's ability to extend the Term, as described in Paragraph 3, or to pursue other remedies, including those described in Paragraphs 17 to 21, remains in full effect.

**Breach of the Agreement**

19.     If, during the Term, the Company (a) commits any felony under U.S. federal law;

(b) provides in connection with this Agreement deliberately false, incomplete, or misleading

information, including in connection with its disclosure of information about individual

culpability; (c) fails to cooperate as set forth in Paragraphs 5 and 6 of this Agreement; (d) fails to

implement a compliance program as set forth in Paragraphs 13 and 14 of this Agreement and

Attachment C; (e) commits any acts that, had they occurred within the jurisdictional reach of the

FCPA, would be a violation of the FCPA; or (f) otherwise fails to completely perform or fulfill

each of the Company's obligations under the Agreement, regardless of whether the Fraud

Section and the Office become aware of such a breach after the Term is complete, the Company

and its subsidiaries and affiliates, shall thereafter be subject to prosecution for any federal

criminal violation of which the Fraud Section and the Office have knowledge, including, but not

limited to, the charges in the Information described in Paragraph 1, which may be pursued by the

Fraud Section and the Office in the U.S. District Court for the District of Maryland or any other

appropriate venue.  Determination of whether the Company has breached the Agreement and

whether to pursue prosecution of the Company, shall be in the Fraud Section's and the Office's

sole discretion.  Any such prosecution may be premised on information provided by the

Company, its subsidiaries or affiliates, or the personnel of any of the foregoing.  Any such

prosecution relating to the conduct described in the Statement of Facts or relating to conduct

known to the Fraud Section and the Office prior to the date on which this Agreement was signed

that is not time-barred by the applicable statute of limitations on the date of the signing of this

Agreement may be commenced against the Company or its subsidiaries or affiliates,

notwithstanding the expiration of the statute of limitations, between the signing of this

Agreement and the expiration of the Term plus one year.  Thus, by signing this Agreement, the

Company agrees that the statute of limitations with respect to any such prosecution that is not

time-barred on the date of the signing of this Agreement shall be tolled for the Term plus one

year.  In addition, the Company agrees that the statute of limitations as to any violation of federal

law that occurs during the Term will be tolled from the date upon which the violation occurs

until the earlier of the date upon which the Fraud Section and the Office are made aware of the

violation or the duration of the Term plus five years, and that this period shall be excluded from

any calculation of time for purposes of the application of the statute of limitations.

20.     In the event the Fraud Section and the Office determine that the Company has

breached this Agreement, the Fraud Section and the Office agree to provide the Company with

written notice of such breach prior to instituting any prosecution resulting from such breach.

Within thirty days of receipt of such notice, the Company shall have the opportunity to respond

to the Fraud Section and the Office in writing to explain the nature and circumstances of such

breach, as well as the actions the Company has taken to address and remediate the situation,

which explanation the Fraud Section and the Office shall consider in determining whether to

pursue prosecution of the Company.

21.     In the event that the Fraud Section and the Office determine that the Company

has breached this Agreement: (a) all statements made by or on behalf of the Company or its

subsidiaries or affiliates to the Fraud Section and the Office or to the Court, including the

attached Statement of Facts, and any testimony given by the Company or its subsidiaries or

affiliates before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior

or subsequent to this Agreement, and any leads derived from such statements or testimony, shall

be admissible in evidence in any and all criminal proceedings brought by the Fraud Section and

18

the Office against the Company or its subsidiaries or affiliates; and (b) the Company or its subsidiaries or affiliates shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that any such statements or testimony made by or on behalf of the Company or its subsidiaries or affiliates prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible. The decision whether conduct or statements of any current director, officer or employee, or any person acting on behalf of, or at the direction of, the Company or its subsidiaries or affiliates, will be imputed to the Company or its subsidiaries or affiliates for the purpose of determining whether the Company or its subsidiaries or affiliates have violated any provision of this Agreement shall be in the sole discretion of the Fraud Section and the Office.

22.     The Company acknowledges that the Fraud Section and the Office have made no representations, assurances, or promises concerning what sentence may be imposed by the Court if the Company breaches this Agreement and this matter proceeds to judgment. The Company further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

23.     On the date that the period of deferred prosecution specified in this Agreement expires, the Company, by the Chief Executive Officer of the Company and the Chief Financial Officer of the Company, will certify to the Fraud Section and the Office, in the form of executing the document attached as Attachment E to this Agreement, that the Company has met its disclosure obligations pursuant to Paragraph 6 of this Agreement. Each certification will be deemed a material statement and representation by the Company to the executive branch of the

United States for purposes of 18 U.S.C. §§ 1001 and 1519, and it will be deemed to have been made in the judicial district in which this Agreement is filed.

### Sale, Merger, or Other Change in Corporate Form of Company

24.     Except as may otherwise be agreed by the parties in connection with a particular transaction, the Company agrees that in the event that, during the Term, it undertakes any change in corporate form, including if it sells, merges, or transfers business operations, that is material either to the Company's consolidated operations, or to the operations of any subsidiaries or affiliates involved in the conduct described in the attached Statement of Facts, as they exist as of the date of this Agreement, whether such sale is structured as a sale, asset sale, merger, transfer, or other change in corporate form, it shall include in any contract for sale, merger, transfer, or other change in corporate form a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement.  The purchaser or successor in interest must also agree in writing that the Fraud Section's and the Office's ability to determine a breach under this Agreement is applicable in full force to that entity.  The Company agrees that the failure to include these provisions in the transaction will make any such transaction null and void.  The Company shall provide notice to the Fraud Section and the Office at least thirty (30) days prior to undertaking any such sale, merger, transfer, or other change in corporate form.  If the Fraud Section and the Office notifies the Company prior to such transaction (or series of transactions) that they have determined that the transaction or transactions have the effect of circumventing or frustrating the enforcement purposes of this Agreement, as determined in the sole discretion of the Fraud Section and the Office, the Defendant agrees that such transaction or transactions will not be consummated  If at any time during the Term the Company engages in a transaction(s) that has the effect of circumventing or frustrating the enforcement purposes of this

Agreement, the Fraud Section and the Office may deem it a breach of this Agreement pursuant to

Paragraphs 19 to 23 of this Agreement.  Nothing herein shall restrict the Company from

indemnifying (or otherwise holding harmless) the purchaser or successor in interest for penalties

or other costs arising from any conduct that may have occurred prior to the date of the

transaction, so long as such indemnification does not have the effect of circumventing or

frustrating the enforcement purposes of this Agreement, as determined by the Fraud Section and

the Office.

**Public Statements by Company**

25.      The Company expressly agrees that it shall not, through present or future

attorneys, officers, directors, employees, agents, or any other person authorized to speak for the

Company make any public statement, in litigation or otherwise, contradicting the acceptance of

responsibility by the Company set forth above or the facts described in the attached Statement of

Facts.  Any such contradictory statement shall, subject to cure rights of the Company described

below, constitute a breach of this Agreement, and the Company thereafter shall be subject to

prosecution as set forth in Paragraphs 19 to 23 of this Agreement.  The decision whether any

public statement by any such person contradicting a fact contained in the attached Statement of

Facts will be imputed to the Company for the purpose of determining whether they have

breached this Agreement shall be at the sole discretion of the Fraud Section and the Office.  If

the Fraud Section and the Office determine that a public statement by any such person

contradicts in whole or in part a statement contained in the attached Statement of Facts, the

Fraud Section and the Office shall so notify the Company, and the Company may avoid a breach

of this Agreement by publicly repudiating such statement(s) within five business days after

notification.  The Company shall be permitted to raise defenses and to assert affirmative claims

21

in other proceedings relating to the matters set forth in the attached Statement of Facts provided that such defenses and claims do not contradict, in whole or in part, a statement contained in the attached Statement of Facts. This Paragraph does not apply to any statement made by any present or former officer, director, employee, or agent of the Company in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of the Company.

26.     The Company agrees that if it, or any of its direct or indirect subsidiaries or affiliates issues a press release or holds any press conference in connection with this Agreement, the Company shall first consult with the Fraud Section and the Office to determine (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters between the Fraud Section and the Office and the Company; and (b) whether the Fraud Section and the Office have any objection to the release.

27.     The Fraud Section and the Office agree, if requested to do so, to bring to the attention of law enforcement and regulatory authorities the facts and circumstances relating to the nature of the conduct underlying this Agreement, including the nature and quality of the Company's cooperation and remediation. By agreeing to provide this information to such authorities, the Fraud Section and the Office are not agreeing to advocate on behalf of the Company, but rather are agreeing to provide facts to be evaluated independently by such authorities.

<u>**Limitations on Binding Effect of Agreement**</u>

28.     This Agreement is binding on the Company and the Fraud Section and the Office, but specifically does not bind any other component of the Department of Justice, other federal agencies, or any state, local or foreign law enforcement or regulatory agencies, or any

other authorities, although the Fraud Section and the Office will bring the cooperation of the

Company and its compliance with its other obligations under this Agreement to the attention of

such agencies and authorities if requested to do so by the Company.  If the court refuses to grant

exclusion of time under the Speedy Trial Act, 18 U.S.C. § 3161(h)(2), all the provisions of this

Agreement shall be deemed null and void, and the Term shall be deemed to have not begun,

except that the statute of limitations for any prosecution relating to the conduct described in the

Statement of Facts shall be tolled from the date on which this Agreement is signed until the date

the Court refuses to grant the exclusion of time plus six months, and except for the provisions

contained within Paragraph 2 of this Agreement.

## Notice

29.     Any notice to the Fraud Section and the Office under this Agreement shall be

given by electronic mail and/or personal delivery, overnight delivery by a recognized delivery

service, or registered or certified mail, with copies by electronic mail, addressed to Chief, FCPA

Unit, Fraud Section, Criminal Division, U.S. Department of Justice, 1400 New York Avenue

NW, Washington, DC 20005, and David I. Salem, Assistant United States Attorney, United

States Attorney's Office for the District of Maryland, Southern Division, 6406 Ivy Lane, Suite

800, Greenbelt, MD 20770.  Any notice to the Company under this Agreement shall be given by

personal delivery, overnight delivery by a recognized delivery service, or registered or certified

mail, addressed to Juan Daniel Frias Díaz, Corporate Vice President of Governance, Risk, and

Compliance of Corficolombiana, Carrera 13 # 26-45, piso 8, Bogotá, Colombia, with copy to

Tatiana Martins of Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017,

or by electronic mail to those individuals or to other counsel or individuals identified to the Fraud

Section and the Office by the Company.  Notice shall be effective upon actual receipt by the Fraud Section and the Office or the Company.

### Complete Agreement

30.     This Agreement, including its attachments, sets forth all the terms of the agreement between the Company and the Fraud Section and the Office.  No amendments, modifications or additions to this Agreement shall be valid unless they are in writing and signed by the Fraud Section and the Office, the attorneys for the Company and a duly authorized representative of the Company.

**AGREED:**

**FOR CORFICOLOMBIANA**

Date: 08/09/2023                    By: _____

Juan Daniel Frias Díaz
Corporate Vice President of
Governance, Risk, and Compliance
Corficolombiana

Date: 08/09/2023                    By: _____

Angela Burgess
Tatiana Martins
Denis McInerney
Davis Polk & Wardwell
Counsel to Corficolombiana

25

**FOR THE DEPARTMENT OF JUSTICE:**

GLENN S. LEON
Chief, Fraud Section
Criminal Division
United States Department of Justice

Date: 8/9/2023                    By:  _Michael Culhane Harper_

Michael Culhane Harper
Trial Attorney


EREK L. BARRON
United States Attorney
District of Maryland

Date: 8/9/2023                    By:  Digitally signed by DAVID SALEM
                                        Date: 2023.08.09 16:29:30 -04'00'

David I. Salem
Assistant United States Attorney

**COMPANY OFFICER'S CERTIFICATE FOR**
**CORFICOLOMBIANA**

I have read this Agreement and carefully reviewed every part of it with outside counsel for Corficolombiana (the "Company"). I understand the terms of this Agreement and voluntarily agree, on behalf of the Company, to each of its terms. Before signing this Agreement, I consulted outside counsel for the Company. Counsel fully advised me of the rights of the Company, of possible defenses, of the provisions of the Sentencing Guidelines, and of the consequences of entering into this Agreement.

The terms of this Agreement have carefully been reviewed by the Board of Directors of the Company, including with outside counsel for the Company. Outside counsel has advised the Board of Directors fully of the rights of the Company, of possible defenses, of the provisions of the Sentencing Guidelines, and of the consequences of entering into the Agreement.

No promises or inducements have been made other than those contained in this Agreement. Furthermore, no one has threatened or forced me, or to my knowledge any person authorizing this Agreement on behalf of the Company, in any way to enter into this Agreement. I am also satisfied with outside counsel's representation in this matter. I certify that I am the Corporate Vice President of Governance, Risk, and Compliance for and that I have been duly authorized by the Company to act on behalf of the Company in relation to this matter, and to execute this Agreement on behalf of the Company.

Date: 08/09/2023

Corficolombiana

By: _____

Juan Daniel Frias Díaz
Corporate Vice President of
Governance, Risk, and Compliance
Corficolombiana

## CERTIFICATE OF COUNSEL FOR
## CORFICOLOMBIANA

I am counsel for Corficolombiana (the "Company") in the matter covered by this Agreement.  In connection with such representation, I have examined relevant Company documents and have discussed the terms of this Agreement with the Company Board of Directors.  Based on our review of the foregoing materials and discussions, I am of the opinion that the representative of the Company has been duly authorized to enter into this Agreement on behalf of the Company and that this Agreement has been duly and validly authorized, executed, and delivered on behalf of the Company and is a valid and binding obligation of the Company.  Further, I have carefully reviewed the terms of this Agreement with the Board of Directors, the General Counsel, and the Corporate Vice President of Governance, Risk, and Compliance of the Company.  I have fully advised them of the rights of the Company, of possible defenses, of the provisions of the Sentencing Guidelines and of the consequences of entering into this Agreement.  To my knowledge, the decision of the Company to enter into this Agreement, based on the authorization of the Board of Directors, is an informed and voluntary one.

Date: 08/09/2023

By: _____
Angela Burgess
Tatiana Martins
Denis McInerney
Davis Polk & Wardwell
Counsel to Corficolombiana